UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROBERT SCOTT,

        Petitioner,

    -v-                                     08-CV-0058(MAT)
                                                **ORDER**

JAMES CONWAY, Superintendent,
Attica Correctional Facility,

        Respondent.

---

## I. Introduction

Petitioner Robert Scott ("petitioner"), who is represented by counsel, has brought a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction of Rape in the First Degree (N.Y. Penal L. § 130.35(1)) and two counts of Sexual Abuse in the First Degree (N.Y. Penal L. § 130.65(1)). Petitioner's conviction was entered in Genesee County Court following a jury trial before Judge Robert C. Noonan. The court sentenced petitioner to aggregate, determinate terms of imprisonment totaling ten years, with five years of post-release supervision. Sentencing Mins. at 22.

## II. Factual Background and Procedural History

Petitioner's convictions arise out of two separate incidents, wherein petitioner forcibly raped one woman (Elizabeth H.) and sexually abused another (Mary S.)[1] after luring them to his Batavia, New York home using a newspaper "help wanted" ad seeking

---

[1] Both victims were 19 years-old.

a live-in housekeeper. Petitioner was a married, 45-year-old businessman dealing in real estate with residences in California and New York. Trial Tr. 20-21, 28-45, 76-125.

Following the crimes, Elizabeth H. met with a Batavia Police detective and agreed to return to petitioner's home to collect her belongings while wearing a body wire. Trial Tr. 98-99, 262-63. The same detective also arranged for a police officer in California to interview petitioner while wearing a body wire. Hr'g Mins. dated 7/11/2003 at 8-15; Trial Tr. 190-91. Both tapes were played for the jury at trial.

Petitioner's defense was that he engaged in consensual sexual contact with both women, and that no force was involved. Trial Tr. 21-22. He did not testify on his own behalf at trial.

Through counsel, petitioner filed a direct appeal to the Appellate Division, Fourth Department, which unanimously affirmed the judgment of conviction. People v. Scott, 12 A.D.3d 1144 (4th Dept. 2004); lv. denied, 4 N.Y.3d 767 (2005).

Petitioner then filed a motion to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. L. § 440.10 ("440 motion") on the grounds that, *inter alia*: (1) his trial counsel was ineffective for failing to advise petitioner that he had the right to testify; and (2) there existed newly discovered evidence that one of the victims, Mary S., consented to sexual contact. See Respondent's Exhibits ("Ex.") G. Following a hearing on

petitioner's 440 motion ("440 hearing"), the state court issued a written order rejecting petitioner's claims. Ex. M. Leave to appeal that decision was denied by the Fourth Department on December 21, 2007. Ex. Q. Petitioner filed the instant petition for habeas corpus on January 22, 2008, claiming that: (1) petitioner was denied due process when the state court erroneously denied his 440 motion; (2) ineffective assistance of trial counsel; and (3) the evidence was legally insufficient to support the conviction for first-degree sexual abuse. Petition ("Pet.") ¶ 22(A)-(C); Petitioner's Memorandum of Law ("Pet'r Mem.") at Points I-III. (Dkt. ## 1,18).

For the reasons that follow, I find that petitioner is not entitled to the writ, and the petition is dismissed.

**III. Discussion**

    **A.    General Principles Applicable to Federal Habeas Review**

        **1.    Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197(2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial

4

incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B. Merits of the Petition**

**1. Erroneous Denial of 440 Motion**

Petitioner contends that newly discovered evidence, in the form of a sworn affidavit by Mary S., negated the element of forcible compulsion and required the state court to vacate his conviction of first-degree sexual abuse. Pet. ¶ 22((A)(I)-(V). He further argues that, because the state court denied petitioner's motion for *vacatur*, he was denied due process and his right to present a defense. Pet'r Mem. at Point I.

As stated above, petitioner, through counsel, filed a 440 motion to vacate the judgment of conviction in Genesee County Court, claiming that newly-discovered evidence required the court to grant a new trial. Ex. G. That evidence consisted of an affidavit from Mary S., in which she stated that petitioner did not force himself upon her, but rather touched her below the waist following a consensual act of kissing, which he immediately ceased upon her request. Ex. G at 4-5.

The county court held a two-day hearing on petitioner's motion, wherein Mary S. testified that on December 10, 2002, petitioner gave her wine and that she and petitioner consensually kissed. 440 Hr'g Mins. at 7. She further testified that, although petitioner did not forcibly touch her, he did touch her below the waist without her consent. Feeling "uncomfortable", Mary S. requested that petitioner leave to get food, to which he complied. When petitioner left, Mary S. called her mother to come and get her. Id. at 7, 15-16.

In a written Decision and Order dated January 23, 2007, the county court held that the victim's testimony "diminish[ed] the element of force," but that she did "not contradict the fact that non-consensual contact was made, and expressly refused to repudiate her trial testimony." Ex. M at 2. The court went on to hold that the victim's hearing testimony would not make a different verdict probable, and that the evidence did not constitute newly discovered evidence as is required to warrant a new trial. Id.

Petitioner's claim essentially consists of two separate arguments: (1) that Mary S.'s testimony established that petitioner did not use force upon the victim; and (2) that petitioner was deprived of certain constitutional rights when the county court refused to grant petitioner a new trial. Pet'r Mem. at Point I. With respect to the first aspect of petitioner's claim, that the evidence is legally insufficient to support a conviction for first-degree sexual abuse, this issue has been separately raised in the instant petition and is addressed below in this decision. See infra part III.B.3.

The second element of petitioner's claim - - that petitioner was denied due process when the court erroneously decided his 440 motion - - is dismissed because it does not present an issue that is cognizable on habeas review. Although the Second Circuit has yet to address this issue, the majority of circuits that have considered whether a habeas petitioner is entitled to relief on the basis of an infirmity in a post-conviction proceeding have held that such claims are not cognizable pursuant to § 2254. Bellamy v. Cogdell, 802 F.Supp. 760, 772-773 (E.D.N.Y.1991) (citing Conner v. Director of Div. of Adult Corrections, 870 F.2d 1384, 1386-87 (8th Cir.), cert. denied, 493 U.S. 953 (1989); Bryant v. State of Maryland, 848 F.2d 492, 493 (4th Cir. 1988); Kirby v. Dutton, 794 F.2d 245, 247-48 (6th Cir. 1986); Vail v. Procunier, 747 F.2d 277 (5th Cir. 1984) (per curiam)); accord, e.g., Childs v. Herbert, 146 F.Supp.2d 317, 326 (S.D.N.Y.. 2001) ("Childs is in custody because

of his conviction of state crimes. The equal protection claim he now seeks to add to his habeas petition does not allege any constitutional flaw in the prosecution, trial, or direct appeal of his case. If successful on this equal protection argument, Childs's petition would not result in his immediate release from custody."); see also Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) ("[E]rrors in a state habeas proceeding cannot serve as a basis for setting aside a valid original conviction. An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself."); Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir.); cert. denied, 495 U.S. 936 (1990) ("Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition.").

Following the majority reasoning that federal habeas courts are authorized by § 2254 to review the constitutionality of a state criminal conviction, and not alleged infirmities in state post-conviction relief proceedings, this claim is dismissed because it is not reviewable in a federal habeas proceeding. See Cruz v. Smith, No. 05 Civ. 10703(LTS)(DF), 2010 WL 582348, *29 (S.D.N.Y. Feb. 17, 2010)(collecting cases)

## 2. Ineffective Assistance of Trial Counsel

Petitioner next avers that his counsel was constitutionally ineffective because counsel allegedly refused to allow petitioner to testify and for failing to obtain Brady[2] material. Pet. ¶ 22(B).

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690.

---

[2] Brady v. Maryland, 373 U.S. 83 (1963) (Suppression by prosecution of evidence favorable to an accused upon request violates due process where evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of prosecution).

Here, petitioner has failed to demonstrate that his counsel's conduct was deficient within the meaning of Strickland, and that, but for the deficiency, the result of his trial would likely have been different.

    **a. Right to Testify**

Petitioner contends that his trial counsel was constitutionally ineffective for failing to advise petitioner of his right to testify at trial, that petitioner desired to take the stand, and that his testimony would have "severely undermined the credibility" of Elizabeth H.'s testimony. Pet. ¶ 22(B)(IV-XII). The 440 court denied petitioner's ineffective assistance of counsel claim following a hearing wherein petitioner, his wife, and his trial attorney, Robert Convissar, Esq. ("Convissar"), gave testimony. It rejecting petitioner's argument, the Genesee County Court held that petitioner had not met his burden of proving, by preponderating evidence, that his trial counsel either failed to inform him of his right to testify or prevented him from testifying. Ex. M at 3. At the 440 hearing, petitioner and his wife claimed that they were not informed that petitioner had the right to testify. 440 Hr'g Mins. at 24-31, 81-84. Convissar testified that he did recommend that petitioner not testify because of petitioner's previous felony conviction for a sex offense and that petitioner was "not in a position to answer certain . . . issues that were raised in the tape recorded statement." Id. at 47-50. Convissar went on to explain that the ultimate decision not to

testify at trial was petitioner's, and that he informed petitioner of this right. Id. at 47-51. The county court found more reliable the testimony of Convissar, who was "experienced and well reputed in the legal community," and further acknowledged that at no time did petitioner object or alert the trial court of his desire to testify. Ex. M at 3-4.

It is well-settled that the ultimate decision regarding whether to testify belongs to the defendant, and it is his attorney's professional duty to advise his client of the "benefits and pitfalls" of a decision to take the stand on his own behalf. Brown v. Artuz, 124 F.3d 73, 78 (2d Cir. 1997). Moreover, "counsel must inform the defendant that the ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter." Brown, 124 F.3d at 79. It is true, however, that an attorney may "strongly advise the course that counsel thinks best." Id. Where, as here, defense counsel has testified that he did inform his client of his right to testify, and the state court credits that testimony over the defendant's, the reviewing court must give deference to the lower court's assessments of credibility. U.S. v. Campbell, 300 F.3d 202, 215 (2d Cir. 2002).

Here, the 440 court credited the testimony of trial counsel over that of petitioner and his wife. Ex. M at 3. That court's decision to credit the testimony of trial counsel is entitled to a presumption of correctness under § 2254(e)(1). See Shabazz v.

Artuz, 336 F.3d 154, 161 (2d Cir. 2003). As such, Convissar's advice to petitioner was constitutionally sound.

In any event, petitioner cannot demonstrate that he has suffered prejudice as a result of petitioner's advice that petitioner not testify at trial. Had petitioner taken the stand, he would have been subject to cross-examination about his prior felony conviction for a sexual offense, which clearly would not have been favorable to his position. See 440 Hr'g Mins. at 47. Because petitioner has not met his burden under either prong of Strickland, it cannot be said that the state court decisions were contrary to, or unreasonable applications of Supreme Court precedent.

### b. Failure to Obtain Brady Material

Petitioner also contends that his attorney was deficient for failing to obtain Brady material. Specifically, he argues that a pair of jeans that Elizabeth H. was wearing on the night that she was raped constituted Brady material because they would impeach her trial testimony that she was wearing loose-fitting slacks. Although trial counsel made a demand for the pants, petitioner alleges that counsel abandoned the issue and did not object to the prosecutor's failure to produce the clothing. Pet. ¶ 22(B)(XX-XXIV). The Appellate Division rejected this claim on the merits without opinion. Scott, 12 A.D.3d at 1145.

To prove a Brady violation, a habeas petitioner must establish that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or could have impeached a

12

prosecution witness; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued from the withholding. Moore v. Illinois, 408 U.S. 786, 794-95 (1972); see also Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Evidence is material only if there is a reasonable probability that disclosure of the evidence to the defense would have changed the result of the proceeding. United States v. Bagley, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. at 682.

Petitioner argues that the evidence is impeaching, but does not point to any evidence in or outside of the record that the clothing was suppressed. Nor has he demonstrated that he suffered prejudice resulting from its withholding. Assuming, *arguendo*, the introduction of the clothing would have impeached the victim's testimony, it is unlikely the jury's verdict would have been different on the basis that the victim was wearing blue jeans and not dress slacks, as she had testified.

In any event, petitioner's attorney requested the pants from the prosecutor twice in a pre-trial written motion and a subsequent oral motion. His decision not to pursue that issue is a decision presumed to have been made in the exercise of reasonable professional judgment. Strickland, 466 U.S. at 690. Accordingly, petitioner has not demonstrated that his counsel's actions were professionally unreasonable. Petitioner has not shown that his

13

representation was constitutionally defective under the Strickland standard, and as such, the Appellate Division's rejection of this claim was not contrary to clearly established Federal law.

### 3. Insufficiency of the Evidence

As a final ground for habeas relief, petitioner claims that there was insufficient evidence to support his conviction for first-degree sexual abuse as to victim Mary S. because the prosecution failed to prove the element of forcible compulsion. The Appellate Division rejected petitioner's argument on the merits. Scott, 12 A.D.3d at 1144-45. The 440 court, in rejecting petitioner's claim of newly-discovered evidence, held that, although Mary S.'s testimony diminished the use of force, she did not repudiate her trial testimony that the contact was non-consensual. Ex. M at 2.

A petitioner challenging the sufficiency of the evidence of his guilt in a habeas corpus proceeding "bears a very heavy burden." Fama v. Commissioner of Correctional Services, 235 F.3d 804, 813 (2d Cir. 2000). Habeas corpus relief must be denied if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). This sufficiency-of-evidence "inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or

acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993). Under the Jackson standard for reviewing evidentiary sufficiency, "the assessment of the credibility of witnesses is generally beyond the scope of review." Schlup v. Delo, 513 U.S. 298, 330 (1995); accord Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal."). The court must determine "whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt ... view[ing] the evidence in the light most favorable to the government, and constru[ing] all permissible inferences in its favor." United States v. Carson, 702 F.2d 351, 361 (2d Cir. 1983) (internal citations omitted), cert. denied sub nom. Mont v. United States, 462 U.S. 1108 (1983). A federal court reviewing an insufficiency-of-the-evidence claim must look to state law to determine the elements of the crime. Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999) (citation omitted), cert. denied, 528 U.S. 1170 (2000).

Under New York law, "[a] person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . . (1) by forcible compulsion[.]" N.Y. Penal L. § 130.65(1). Forcible compulsion means to compel by either: (1) use of physical force; or (2) a threat, express or implied, which places a person in fear of immediate death or physical injury to

15

himself, herself or another person. N.Y. Penal L. § 130.00(8). New York courts have found that physical violence is not a necessary component to prove forcible compulsion. Rather, the court may take into account the victim's state of mind, age, the size and strength of the victim and the defendant, as well as the nature of their relationship. People v. Sehn, 295 A.D.2d 749, 750 (3d Dept.), lv. denied, 98 N.Y.2d 732 (2002) (Evidence was sufficient to support determination that defendant engaged in sexual intercourse with minor victims by forcible compulsion; victims were locked in apartment with defendant, whom they had obeyed, trusted, and viewed as an "uncle," and defendant had extreme advantage over victims in maturity, size, and strength, and victims testified as to events.); see also People v. Davis, 21 A.D.3d 590, 592 (3d Dept. 2005) (finding forcible compulsion where defendant, who was significantly larger than the victim and approximately 20 years older, pulled down the victims pants, made sexual contact, and victim did not protest); People v. Bianchi, 55 A.D.2d 993, 994 (3d Dept. 1977) (although there was no testimony of beating or other violent physical compulsion, victim, who was 18 years old and weighed 120 pounds in a car with three men, was touched without her consent and thus subjected to forcible compulsion).

Viewing the evidence in the light most favorable to the prosecution, the testimony of Mary S. demonstrated that petitioner put his hand down her pants and touched her buttocks without her consent. She was lured into petitioner's home under the ruse of

employment. Mary S., at the time of the incident, was 19 years-old, and petitioner was 45. Petitioner had given the victim wine, and proceeded to put his arm around her. She, in turn, moved to the other side of the couch they were sitting on, indicating to him that she was just his employee. Petitioner ignored her pleas, and proceeded to pull her near him, put his hands down her pants and touch her buttocks. T. 38-40. Given that the victim had lived alone in petitioner's house for over a month and was suddenly confronted by his advances, had no car in which to leave the house, and likely felt constrained by petitioner's role as her employer, it was reasonable for the jury to infer that the victim was overwhelmed and subject to physical force. Moreover, petitioner had repeatedly pulled the victim near him, despite that she had made clear that she did not consent to the physical contact and tried to move away. See Trial Tr. 40-41; 440 Hr'g Mins. at 13-17. In light of the elements of first-degree sexual abuse, a rational trier of fact could have found that the evidence established petitioner's guilt of non-consensual sexual touching by physical force or by an implied threat. See N.Y. Penal L. §§ 130.65(1), 130.00(8). Accordingly, the Appellate Division's decision that the evidence was legally sufficient was not contrary to, or an unreasonable application of Jackson v. Virginia.

## IV. Conclusion

For the reasons stated above, Robert Scott's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the

action is dismissed.  Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:   July 9, 2010
         Rochester, New York